NORTHCUTT, Judge.
 

 James A. Canale and Jacana Holdings Group, LLC, have appealed the order denying their motion to dismiss the complaint against them for lack of personal jurisdiction.
 
 See
 
 Fla. R.App. 9.130(a)(3)(C)(i). We reverse and remand for further proceedings.
 

 Jeffrey Rubin and the two corporations, both named Real Estate Riches, (hereinafter referred to, where appropriate, as either “RER,” “RER-PA,” or “RER-FL”) filed suit against Canale and Jacana in the Sarasota circuit court. Rubin, a Florida resident, is a principal in both RER companies. Canale is a resident of Pennsylvania. Jacana, a now-defunct Wyoming limited liability company, had its principal place of business in Pennsylvania.
 

 The amended verified complaint alleged numerous causes of action, both in contract and in tort, including breach of a confidentiality agreement, breach of an independent contractor agreement, misappropriation of trade secrets, and defamation. It also alleged that Canale and Jacana had subjected themselves to Florida long-arm jurisdiction by: (1) carrying on a business in Florida, (2) committing torts in Florida, (3) breaching a contract in Florida, and (4) engaging in substantial and not isolated activity in Florida.
 
 See
 
 § 48.193(l)(a), (l)(b), (l)(g), (2), Fla. Stat. (2007).
 

 Canale and Jacana moved to dismiss for lack of personal jurisdiction. Their motion was accompanied by an affidavit that disputed the allegations of the complaint. The circuit court held a hearing on the motion, but it did not take evidence. In its order denying the motion, the court found that it had jurisdiction over the defendants on three bases: that they carried on a business in Florida; that they committed torts in Florida; and that they engaged in substantial, not isolated, activity in Florida.
 

 Our review of a circuit court’s decision on a motion to dismiss for lack of personal jurisdiction is de novo.
 
 See Wendt v. Horowitz,
 
 822 So.2d 1252, 1256 (Fla.2002);
 
 Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co. Ltd.,
 
 752 So.2d 582, 584 (Fla.2000). A Florida court conducts a two-step inquiry when determining whether jurisdiction under Florida’s long-arm statute is proper in a given case. Initially, it must determine whether the complaint alleges jurisdictional facts sufficient to invoke the statute. If so, the court must then examine whether the defendant has sufficient “minimum contacts” with Florida in order to satisfy due process requirements.
 
 Execu-Tech,
 
 752 So.2d at 584.
 

 The Florida long-arm statute provides for two types of personal jurisdiction: general, § 48.193(2), and specific, § 48.193(1). General jurisdiction arises
 
 *466
 
 when the defendant engages in substantial and not isolated activities in Florida. Thus, for example, a corporation with many facilities or activities in Florida has purposefully directed its activities at this state and therefore is subject to suit here on any claim.
 
 Christus St. Joseph’s Health Sys. v. Witt Biomedical Corp.,
 
 805 So.2d 1050, 1052 (Fla. 5th DCA 2002). General jurisdiction arises from a party’s contacts with Florida that are unrelated to the litigation.
 
 See Madara v. Hall,
 
 916 F.2d 1510, 1516 n. 7 (11th Cir.1990). Specific jurisdiction, on the other hand, requires a causal connection between the defendant’s activities in Florida and the plaintiffs cause of action, a requirement known as “connexity.”
 
 Wendt,
 
 822 So.2d at 1260.
 

 Generad jurisdiction: § ⅛8.193(2)
 

 As a preliminary matter, we note that the plaintiffs’ allegation of general jurisdiction seems superfluous in this case. General jurisdiction requires far more wide-ranging contacts with the forum state than specific jurisdiction, and it is thus more difficult to establish. As mentioned, a plaintiff must establish that there is general jurisdiction over a defendant only when the defendant’s contacts with the forum state are unrelated to the plaintiffs cause of action.
 
 See, e.g., Helicopteros Nacionales de Colombia, S.A. v. Hall,
 
 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) (reciting the following facts when noting that the plaintiffs had to show that general jurisdiction existed: Texas residents were killed in a helicopter accident in Peru while working for a Peruvian consortium; plaintiffs, the decedents’ representatives, sought to maintain a wrongful "death suit in Texas against the Colombian corporation that provided the helicopters to the Peruvian company; helicopter company’s contacts with forum state were merely commercial and not related to the accident that was the subject of the lawsuit).
 

 All of the causes of action alleged in this case stemmed from the business dealings between the parties. These dealings also were the very contacts with Florida that the plaintiffs argued as the bases for this state’s personal jurisdiction over the defendants. Thus, the defendants’ alleged contacts were related to the plaintiffs’ causes of action and, if true, would subject the defendants to specific jurisdiction. But, whether the plaintiffs needed to or not, they claimed that Canale and Jacana were subject to this state’s general jurisdiction, and the circuit court agreed. Consequently, we must address this ruling.
 

 The order determining that there was general personal jurisdiction over Ca-nale and Jacana did not recite facts to support that conclusion. Because we conduct a de novo review of such orders, we turn to the allegations of the complaint and the affidavit filed in support of the motion to dismiss. The complaint tracked the language of the statute and alleged: “Defendants Canale and Jacana are subject to personal jurisdiction in Florida for having engaged in substantial and not isolated activity within the State pursuant to F.S. 48.193(2).” This bare assertion was sufficient to meet the plaintiffs’ initial burden of pleading jurisdiction.
 
 See Venetian Salami Co. v. Parthenais,
 
 554 So.2d 499, 502 (Fla.1989);
 
 Hilltopper Holding Corp. v. Estate of Cutchin ex rel. Engle,
 
 955 So.2d 598, 601 (Fla. 2d DCA 2007). The burden then shifted to the defendants to submit a legally sufficient affidavit or other sworn proof to contest the plaintiffs’ jurisdictional allegation.
 
 Venetian Salami,
 
 554 So.2d at 502;
 
 Hilltopper Holding,
 
 955 So.2d at 598.
 

 Canale filed an affidavit on his own behalf and on behalf of Jacana contesting
 
 *467
 
 the allegation that they engaged in substantial activity in Florida. The affidavit averred that:
 

 13. Jacana has no office in Florida, owns no interest in real property in Florida, does not conduct business in Sarasota County or any other County in Florida, and is not registered to do business in Florida.
 

 14. Jacana does not have employees, officers, agents or other representatives located or working in Florida, does not regularly sell or ship goods into Florida, and does not advertise or solicit business in Florida.
 

 15. Jacana does not engage in substantial activity within the State of Florida.
 

 16. I do not reside in Florida, have no office in Florida, own no interest in real property in Florida and do not conduct business in Sarasota County or any other County in Florida.
 

 17. I do not engage in substantial activity within the State of Florida.
 

 In addition, Canale recounted that he had visited Florida only once, for a social celebration with Rubin and other business associates. Rubin and the RER corporations did not file affidavits contesting Ca-nale’s allegations. The verified amended complaint did not identify any substantial activities of Canale or Jacana in Florida, or any activities unrelated to the pending litigation.
 

 If a defendant’s affidavit fully disputes the plaintiffs allegation, which in this case was a mere boilerplate recitation of the statute, the burden then shifts back to the plaintiff to prove by affidavit or other sworn proof that there is a basis for long-arm jurisdiction.
 
 Hilltopper Holding,
 
 955 So.2d at 602. As noted, Rubin and the RER entities did not do so. As such, they failed to meet their burden of showing that Canale and Jacana fell within the ambit of the Florida long-arm statute.
 
 See Execu-Tech,
 
 752 So.2d at 584.
 

 Vis-á-vis their assertion of general personal jurisdiction, the plaintiffs also failed to meet the second requirement of the
 
 Execu-Tech
 
 test, i.e., that the defendants had the requisite “minimum contacts” with Florida. This can be seen when the limited activities alleged in the plaintiffs’ complaint are compared to the facts of
 
 Helicopteros Nacionales,
 
 466 U.S. at 416-419, 104 S.Ct. 1868. In that case the United States Supreme Court found no continuous and systematic business contacts sufficient to support general jurisdiction over a foreign corporation in Texas notwithstanding that the corporation had sent its chief executive officer to Texas to negotiate a contract; accepted checks drawn on a Texas bank; purchased products, equipment, and training services; and sent its employees to Texas for training. Canale’s and Jaca-na’s contacts with Florida, as alleged in the complaint, were not nearly as extensive or systematic as those described in
 
 Helicópteros. See also Rafal v. Mesick,
 
 661 So.2d 79, 81-82 (Fla. 2d DCA 1995) (discussing what activities in the state might support general jurisdiction).
 

 For these reasons, the circuit court’s holding that the defendants were subject to its general personal jurisdiction under the long-arm statute was incorrect.
 

 Specific Jurisdiction
 

 A. Conducting a Business in Florida, § £8.193(l)(a)
 

 The plaintiffs’ complaint asserted that Canale and Jacana breached two contracts — an initial confidentiality agreement entered into at the outset of the parties’ relationship, and an Independent Contractor Agreement executed after negotiation. It seems undisputed that the defendants entered into these agreements in Pennsyl
 
 *468
 
 vania. The confidentiality agreement was between “Real Estate Riches, Inc.” and Canale and Jacana. The parties to the Independent Contractor Agreement were RER-PA and the defendants. Funds due from the defendants under the Independent Contractor Agreement were to be deposited “at a[n] [RER] designated location in North Huntington, PA.” That contract contained a clause stating that the agreement would be interpreted under Florida law and that the parties consented to exclusive jurisdiction in Sarasota, Florida. No one appears to dispute these facts, but the parties have divergent views of nearly everything else in their relationship.
 

 The verified amended complaint alleged facts that might support specific jurisdiction in Florida based on “operating, conducting, engaging in, or carrying on a business or business venture in this state.” § 48.193(l)(a). But Canale’s affidavit disputed these allegations. We will not attempt to point out every disagreement between the parties but will give a few examples. The Independent Contractor Agreement concerned the use of a program that RER-PA had developed for real estate education and mentoring. The complaint alleged that RER-PA assigned the rights to this program to RER-FL, that Rubin advised Canale of this fact, and that Rubin told Canale that he directed all RER activities from the corporate office of RER-FL in Sarasota. Canale’s affidavit averred that he had never been told of the assignment and in fact was unaware of the existence of RER-FL before March 2006, over a year after he and Jacana entered into the Independent Contractor Agreement. The complaint alleged that the defendants made payments to and requested payments from RER-FL for a “Book of the Month Club” feature added to the program. Yet Canale’s affidavit stated that while the plaintiffs claim that RER-FL made certain payments, “my requests for payment were for work done outside Florida and [were] all originally directed to RER-PA outside Florida. Compensation for the services rendered by Jacana to RER-PA [was] due and payable in Pennsylvania.” Finally, the complaint discussed numerous e-mails Canale sent and telephone calls he made to Rubin, who was located in Florida.
 

 When determining that the defendants engaged in business in Florida, the circuit court mainly relied on the fact that they “made and received hundreds of business telephone calls to and from Florida, and engaged in ongoing facsimile and email communication with Florida.” The first problem with this ruling is that the authority cited by the court for this proposition,
 
 Wendt v. Horowitz,
 
 822 So.2d 1252, dealt with long-arm jurisdiction based on committing a tort in Florida, § 48.193(1)(b), not jurisdiction based on doing business in Florida. The holding in
 
 Wendt
 
 was specific to tort-based causes of action:
 

 First, in order to “commit a tortious act” in Florida, a defendant’s physical presence is not required. Second, “committing a tortious act” in Florida under section 48.193(l)(b) can occur through the nonresident defendant’s telephonic, electronic, or written communications into Florida.
 

 Id.
 
 at 1260.
 

 We do not make a blanket suggestion that the reasoning in
 
 Wendt
 
 could never be used to analyze whether section 48.193(l)(a) confers jurisdiction on the basis of a defendant doing business in Florida.
 
 But cf. Carlyle v. Palm Beach Polo Holdings, Inc.,
 
 842 So.2d 1013, 1016 (Fla. 4th DCA 2003) (noting that the statutory basis conferring jurisdiction over the defendant would have to be under section 48.193(1)(b), and stating that “[b]y the trial
 
 *469
 
 court’s announced reliance on
 
 Wendt,
 
 it apparently came to the same conclusion”). But when holding that long-arm jurisdiction based on the commission of a tort in Florida can arise by virtue of communications originating in another state, the
 
 Wendt
 
 court emphasized that jurisdiction in a particular case turns on the nature of the communications themselves.
 
 Wendt,
 
 822 So.2d at 1260. The reason is the connexity requirement set forth in section 48.193(1), which provides for long-arm jurisdiction for any cause of action “arising from the doing of any of the following acts.” Thus, the
 
 Wendt
 
 court held, the tort cause of action at issue there had to arise from the communications on which the plaintiff was attempting to predicate long-arm jurisdiction.
 
 Id.
 
 Certainly, telephone calls made to Florida may be relevant to whether an out-of-state resident is doing business in this state. But in order to come to this conclusion, the nature of the calls must be examined.
 

 Canale’s affidavit addressed the telephone calls he made to Rubin:
 

 While it is true that I had phone conversations and e-mail contact with Rubin while he claimed to be in Florida, for purposes of discussing business dealings under the [Independent Contractor] Agreement and otherwise, all such contact was for the purpose of conducting business either 1) related to or arising out of the Agreement, which was in no way directed to any business activity by the Defendants in Florida, nor targeted at Florida consumers or residents, or 2) to discuss other potential business deals involving my or Jacana’s actual or potential work in Pennsylvania and the surrounding states. I have not in the past had any discussions with any Plaintiff, or anyone else for that matter, which involved or contemplated my conducting any sort of business in Florida, or directed at any Florida consumer or resident.
 

 The verified amended complaint set out in detail the number of telephone calls Ca-nale made to Rubin. But it did not detail the nature of these conversations other than to assert that “they were in connection with the business dealings between Canale and Real Estate Riches, Inc.”
 

 The factual conflicts between the verified amended complaint and Canale’s affidavit were clear and could not be reconciled. That being the case, the court was obliged to hold a limited evidentiary hearing to resolve the fact disputes.
 
 See Venetian Salami,
 
 554 So.2d at 503;
 
 Bellairs v. Mohrmann,
 
 716 So.2d 320, 323 (Fla. 2d DCA 1998). We reverse the portion of the order finding jurisdiction over Canale and Jacana under section 48.193(l)(a), and we remand for an evidentiary hearing. After the facts are established, the court must reconsider whether the plaintiffs’ causes of action arose from the defendants conducting a business or business venture in this state by virtue of the alleged communications. If it so finds, it must then determine whether the defendants had “minimum contacts” with Florida sufficient to satisfy due process requirements.
 
 See Execu-Tech,
 
 752 So.2d at 584.
 

 B. Committing a Tortious Act in Florida, § I8.193(l)(b).
 

 In their complaint, Rubin and the RER companies claimed that Canale committed torts in Florida, namely defamation and civil conspiracy, and that Jacana was involved in the civil conspiracy. None of the conspiracy allegations against Jacana established how this alleged tort was committed in Florida. Therefore, we reverse the portion of the order that found Jacana subject to jurisdiction in Florida pursuant to section 48.193(l)(b).
 

 As to Canale,
 
 Wendt
 
 might support jurisdiction in this state.
 
 See
 
 822 So.2d at
 
 *470
 
 1260. The plaintiffs alleged that the torts were committed, in part, by Canale posting information on a web site. But the circuit court’s order did not reflect that it had analyzed whether this action constituted sufficient “minimum contacts” necessary to satisfy due process.
 
 See Execu-Tech,
 
 752 So.2d at 584.
 

 Accordingly, we reverse the portion of the order finding that jurisdiction over Ca-nale was proper under section 48.193(l)(b) and remand this issue for further proceedings.
 

 Reversed in part; reversed and remanded in part.
 

 SILBERMAN and KELLY, JJ., Concur.